**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| WHOOP, INC., <br><br> Plaintiff, <br><br> v. <br><br> NEXXBASE TECHNOLOGIES INC. and NEXXBASE MARKETING PVT. LTD. (d/b/a LUNA, LUNAZONE, and NOISE), <br><br> Defendants. | Case No. _____ <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff WHOOP, Inc. ("Plaintiff" or "WHOOP"), by and through its counsel, brings this action against Defendants Nexxbase Technologies Inc. and Nexxbase Marketing Pvt. Ltd. (d/b/a Luna, LunaZone, and Noise) (collectively, "Luna" or "Defendants") and alleges and states as follows:

**INTRODUCTION**

1.     Since its founding over a decade ago, WHOOP has been on the cutting edge of collecting biometric information through a wearable device that is then used by WHOOP to provide its users with insights into the physiology that can help unlock their full potential.

2.     From its first commercial release, the wearable has featured a revolutionary appearance that flew in the face of conventional fitness trackers and gave it a distinct and highly recognizable aesthetic.  Over the past decade, that unique aesthetic has developed into iconic trade dress, making the WHOOP wearable instantly recognizable to consumers:



Ex. 1.

3.      Seeking to trade off the goodwill that WHOOP has developed over the past decade, as well as the unique association between the well-known WHOOP trade dress and the popular WHOOP wearable, Defendants recently developed and announced a health monitoring device that makes unauthorized use of the WHOOP trade dress, despite knowledge that WHOOP owns and exclusively uses the trade dress. Images of a WHOOP device featuring the trade dress next to Defendants' infringing product leave no doubt that this infringement is a willful attempt to misappropriate WHOOP intellectual property to offer an inferior and misleading product:

| WHOOP Product Featuring the WHOOP Trade Dress | Representative Example of Luna's Infringing Product |
|---|---|
|  | |

4.      Plaintiff seeks damages and injunctive relief for trade dress infringement, false designation of origin, unfair competition, and dilution by Luna in violation of the laws of the United States and the State of Delaware.

**THE PARTIES**

5.      Plaintiff WHOOP, Inc. is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business at One Kenmore Square, Suite 601, Boston, Massachusetts 02215.

6.      Upon information and belief, Defendant Nexxbase Technologies Inc. is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 8 The Green, STE A, Dover, Delaware 19901.

7.      Upon information and belief, Defendant Nexxbase Marketing Pvt. Ltd. is a company organized and existing under the laws of India, with a principal place of business of Unite No. 30/31A, Tower B1, Spaze IT Tech Park, Sohna Road, Gurugram, Haryana, 122001, India.

8.      Upon information and belief, Nexxbase Technologies Inc. and Nexxbase Marketing Pvt. Ltd. do business as "Luna."

9.      Upon information and belief, Nexxbase Technologies Inc. and Nexxbase Marketing Pvt. Ltd. do business as "LunaZone."

10.     Upon information and belief, Nexxbase Technologies Inc. and Nexxbase Marketing Pvt. Ltd. also do business as "Noise."

**JURISDICTION AND VENUE**

11.     This action arises under federal law, state law, and common law. This Court has original subject matter jurisdiction over the federal law claims under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1138(a)-(b) (trade dress, false designation of origin, and unfair competition), and 15 U.S.C. § 1121 (Lanham Act). This Court has subject matter jurisdiction over the remining claims under 28 U.S.C. § 1367 because they are substantially related to Plaintiff's federal claims such that they form part of the same case or controversy.

12.     Defendants are subject to specific jurisdiction in this Court, *inter alia*, because they conduct business in the District and have committed at least some of the acts complained of herein within this District.

13.     On information and belief, Defendants sell large quantities of various products, including wearable health monitoring devices, to customers in Delaware, maintain an interactive website and health monitoring application, accessed by residents of Delaware, and otherwise avail themselves of the privilege of doing business in the State of Delaware. Defendants have purposely directed their activities, including the illegal acts against Plaintiff described below, toward this District, and this action arises from those activities.

14.     The Court has personal jurisdiction over Defendant Nexxbase Technologies Inc. because the company is organized and existing under the laws of the State of Delaware and advertises a place of business in Delaware.

15.     The Court has personal jurisdiction over Defendant Nexxbase Marketing Pvt. Ltd. pursuant to Federal Rule of Civil Procedure 4(k)(2) because Plaintiff's claims arise under federal law, Nexxbase Marketing Pvt. Ltd. is not subject to jurisdiction in any state's courts of general jurisdiction, and this exercise of jurisdiction comports with due process.

16.     Nexxbase Marketing Pvt. Ltd. has continuous and systematic contacts and minimum contacts with the entire United States that give rise to Luna's infringement, including expressly targeting the United States, including Delaware, as a market for its infringing products.

17.     Defendants intend to market and sell its infringing products in the United States. For example, upon information and belief, Defendants maintain at least two websites that purport to sell products into the United States, among other countries, including https://www.lunazone.com and https://us.gonoise.com/. *See* Exs. 2, 3.

18.    Defendant Nexxbase Marketing Pvt. Ltd. has also sought to avail itself of United States intellectual property protections. It is the owner of two active federal trademark registrations in the United States, as well as three pending federal trademark applications.

19.    On information and belief, Luna announced the launch of the Infringing Device at the 2026 Consumer Electronics Show ("CES 2026"), a conference for trade professionals in the technology industry held from January 6-9, 2026, in Las Vegas, Nevada. *See* Exs. 4, 5.

20.    Nexxbase Marketing Pvt. Ltd. has purposefully availed itself of the privileges of conducting activities in the United States and invoked the benefits and protections of the United States' laws, including by forming a subsidiary in the United States, seeking and obtaining trademark protection from the USPTO, and selling products into the United States, including to consumers in Delaware. Accordingly, jurisdiction in this forum is proper.

21.    Venue is proper in this District under 28 U.S.C. § 1391.

## THE WHOOP TRADE DRESS

22.    Since its founding in 2012, WHOOP has expended considerable time and effort developing premium hardware, software, and analytics to unlock human performance and monitor health.

23.    As a result of the tireless efforts of WHOOP product developers and engineers, the WHOOP physiological monitoring device (the "WHOOP Wearable") has established a reputation as an industry leader in health monitoring devices.

24.    The initial product released by WHOOP was a wearable optimization system designed for elite athletes and teams, to help them perform at their highest levels by gaining greater visibility into their bodies' needs, but WHOOP has expanded its target consumers to include all general consumers, including general consumers interested in health and wellness.

25.     The WHOOP Wearable allows consumers to track daily behaviors and metrics like sleep, strain, recovery, and more, to help users optimize their physical and mental performance.

26.     Since least as early as 2015, when WHOOP released the first commercial version of the WHOOP Wearable, the WHOOP Wearable has born distinctive features designed to differentiate it from competitor products.

27.     Specifically, the overall appearance of the WHOOP Wearable, in all of its iterations over the past decade, includes at least the following features, the combination of which create a non-functional and distinctive trade dress: a continuous fabric band that wraps over the device (i.e., a faceless device) with thin metal accents on the sides of the device, an example of which is shown below (the "WHOOP Trade Dress").



28.     Since 2015, WHOOP has continuously used the WHOOP Trade Dress with the intention of creating a recognizable, iconic, unique form factor that consumers can readily identify as a product that is solely available from WHOOP. Beginning with the launch of its first wearable, WHOOP has had exclusive use of the WHOOP Trade Dress in the marketplace, which has assured consumers that wearables featuring the WHOOP Trade Dress are authentic WHOOP products.

29.     This unique faceless design with the continuous fabric band and thin metal accents was revolutionary to the health tracking wearables industry, which was previously dominated by

wearable devices with increasingly elaborate displays. It was also recognized for its innovation and distinctive aesthetics. For example, WHOOP won the Red Dot Award: Product Design 2016, one of the largest and most prestigious international product design awards in the world, for the innovative design of the WHOOP Wearable. *See* Ex. 6.

30.    The WHOOP Trade Dress is not functional. WHOOP has never claimed the WHOOP Trade Dress in any utility patent. WHOOP does not market the WHOOP Trade Dress based on the functionality of the WHOOP Trade Dress. The design features embodied by the WHOOP Trade Dress are not essential to the function of the wearable device, do not make the device cheaper or easier to manufacture, and do not affect the quality of the device.

31.    The design embodied by the WHOOP Trade Dress is not a competitive necessity, as there are numerous other designs available that are equally feasible and efficient, none of which necessitate copying or imitating the WHOOP Trade Dress. Indeed, several other providers of wearable health monitoring devices offer products that do not feature the WHOOP Trade Dress, representative examples of which are shown below (offered by Apple, Fitbit, Pavlok, and Garmin, respectively).



Ex. 7.

32.    Even for those competitors wishing to market a faceless fitness tracker, the WHOOP Trade Dress is not a competitive necessity. There are numerous other faceless designs

available that are equally feasible and efficient, none of which necessitate copying or imitating the WHOOP Trade Dress, representative examples of which are shown below (offered by Pavlok, Panther, J-Style, Sharper Image, Fitbit, and Oura, respectively).



Ex. 8.

33.    The features of the WHOOP Trade Dress serve to render the WHOOP Wearable, the embodiment of the WHOOP Trade Dress, as a distinct product originating solely from WHOOP.

34.    The WHOOP Wearable has been commercially successful, has received a large volume of unsolicited media attention, and has been featured in many popular publications nationwide and internationally.

35.    As a result of long and substantial use, sales, advertising, and third-party recognition, the WHOOP Trade Dress is widely and instantly recognizable for its unique design

and is associated with one source, namely, WHOOP. WHOOP thus has strong common law rights in the WHOOP Trade Dress.

36.    Based on its strong common law rights in the WHOOP Trade Dress and the secondary meaning WHOOP established in the WHOOP Trade Dress through the substantially exclusive use of the design for a decade, WHOOP filed a pending federal application for one embodiment of the WHOOP Trade Dress (App. Serial No. 99/080,005) for use in connection with "Health monitoring devices for capturing and transmitting physiological metrics to be available on an online analytic system; Wearable heart rate monitors" in International Class 10 (the "Application"). As described in the Application, the trade dress for which WHOOP has filed its application includes:

> [A] three-dimensional configuration of a wearable device comprised of a U-shaped clasp on which the word WHOOP appears on a crossbar, with sides that hinge distally from the crossbar into a rectangular sensor device (not visible) and allow the clasp to open and close into place over the sensor device. The strap is the band which connects to the sensor device on one end and the crossbar on the other and, when closed, wraps around the entire design and lays flat over the sensor device and snug on the wrist of the wearer. The word WHOOP and the edging detail on the side of the wearable device, both featured in broken lines, are not claimed as part of the mark[.]



37.    WHOOP has invested substantial time, money, and effort to advertise and promote the WHOOP Wearable and the WHOOP Trade Dress in the United States and around the world through virtually every available type of media, including print publications, television, and the

Internet (e.g., via its own website, banner ads, and social media, including Facebook, Twitter, Instagram, TikTok, Pinterest, and LinkedIn). WHOOP prominently displays the WHOOP Trade Dress on its website and in all of its marketing materials. *See* Exs. 1, 9, 10.

38.    WHOOP also promotes the WHOOP Trade Dress on its various social media accounts, including the WHOOP Instagram account, which has 1.8 million followers. *See* Ex. 10.

39.    WHOOP also extensively promotes the WHOOP Trade Dress via TV commercials, at least one of which was aired during the Super Bowl. *See* Ex. 1.

40.    WHOOP deliberately de-emphasizes the use of its trademarks WHOOP and W on the WHOOP Wearable in order to allow the product design itself to function as the source identifier. In every version of the WHOOP Wearable since its release in 2015, the WHOOP or W trademarks have only been faintly etched on the bar across the device making them impossible to see from even a few feet away.

41.    By virtue of its efforts, WHOOP has developed substantial recognition and goodwill in its unique and distinctive WHOOP Trade Dress.

42.    The public's association of the WHOOP Trade Dress with WHOOP has been enhanced by advertisement of the WHOOP Wearable that prominently features the WHOOP Trade Dress and encourages consumers to identify the WHOOP Wearable by the WHOOP Trade Dress (e.g., "Is your crush wearing a WHOOP?"). Exemplary advertisements are reproduced below.



Ex. 1.

43.     WHOOP also promotes the WHOOP Wearable in connection with the WHOOP Trade Dress throughout the United States through partnerships with well-known individuals, professional sports associations, college sports teams, and industry partners. For example, WHOOP has partnered with celebrities, such as global music icon Niall Horan, organizations, such as the Professional Golf Association (PGA), and the National Football League (NFL), Warner Bros. Discovery, and Notre Dame Athletics, and professional athletes, such as Patrick Mahomes (football), Cristiano Ronaldo (soccer), Michael Phelps (swimming), and Aryna Sabalenka (tennis), among many others.

44.     WHOOP relies on the WHOOP Trade Dress in its marketing materials, investing heavily in brand recognition from trade dress. For example, WHOOP promotes its partnerships with various professional athletes and celebrities by publishing videos and images of these individuals wearing the WHOOP Wearable to encourage identification of the WHOOP Wearable based on the distinct design of the device alone.







Exs. 1, 9, 10.

45.     As a result of the widespread use and display of the WHOOP Trade Dress by WHOOP in association with its wearable device, (a) the public has come to recognize and identify the products bearing the WHOOP Trade Dress as emanating from WHOOP, (b) the public recognizes that products bearing the WHOOP Trade Dress constitute high-quality products that conform to the specifications created by WHOOP, and (c) the WHOOP Trade Dress has established strong secondary meaning and extensive goodwill.

46.     In addition to substantial advertising and promotional activities conducted by WHOOP, the WHOOP Wearable has received and continues to receive widespread unsolicited media coverage and attention, including in industry publications and general third-party articles,

press releases, and videos with worldwide distribution. For example, the WHOOP Wearable, along with pictures showing the WHOOP Trade Dress, has appeared in *Forbes*, *Sports Illustrated*, *The New York Times*, *Good Housekeeping*, *Conde Nast Traveler*, *Cosmopolitan*, *People*, *WIRED*, and CNET, among countless other publications in print and online. *See, e.g.*, https://www.forbes.com/connect/audience-communities/ ("Forbes reaches over 150 million people globally each month"); https://www.nytimes.com/2023/11/08/business/media/new-york-times-q3-earnings.html#:~:text=The%20New%20York%20Times%20has%20more%20than,up%2030.1%20percent%20from%20a%20year%20earlier ("*The New York Times* Passes 10 Million Subscribers"); https://advertising.hearstmagazines.com/brands/good-housekeeping (*Good Housekeeping* has an audience of 36.8 M); www.linkedin.com/company/people-magazine (*People* "touch[es] more than 100 million consumers"); www.wired.com/about/press/ ("WIRED reaches more than 30 million people each month"); www.cnet.com/about/ (*CNET* has 73 million monthly US page views).

47.    Indeed, it is routine for articles to identify users of the WHOOP Wearable solely through images from afar based on the distinctive WHOOP Trade Dress. For example, in an article published by *People* on July 10, 2024, the author reports that Prince William wore a WHOOP Wearable at the UEFA EURO quarterfinals, along with a picture of the device, as shown in the excerpt below.



The apparent WHOOP band was visible on Prince William's right wrist when he touched his temples and leaped from his seat during the close game. The teams tied 1-1 before England advanced through a penalty shootout.

Prince William cheers at the end of the UEFA EURO 2024 quarter-final match between England and Switzerland in Dusseldorf, Germany on July 6, 2024.
Credit: Gokhan Balci/Anadolu via Getty

Ex. 11.

48.     In a separate article reporting on Prince William wearing a WHOOP Wearable, the author identifies the WHOOP Wearable at a distance based on the distinctive design, shown in the images below: "To the untrained eye this might have just looked like a black canvas band wrapped around his wrist. But fit and athletically gifted people, such as me, instantly recognize it as the It fitness accessory worn by Michael Phelps, Tiger Woods, Rory McIlroy and the like." Ex. 11. The author further comments on the instant recognizability of the design: "When you start using Whoop, you get high on the silent respect that comes from fellow wearers when they get a flash of your wrist." *Id*.



Prince William was seen wearing a Whoop device while watching England v Switzerland at the Euros
REX SHUTTERSTOCK

49.    In an article published on www.golf.com on September 20, 2019, the author reports that Tiger Woods was spotted wearing a WHOOP Wearable and commented that the WHOOP Wearable "has gained high-profile traction on the PGA Tour, used by the likes of Scott Stallings, Justin Thomas and Rory McIlroy." The article was published along with a picture of Rory McIlroy wearing a WHOOP Wearable at the U.S. Open with the WHOOP Wearable circled for readers to identify, as shown in the excerpt below. Ex. 11.



Inquiring minds wanted to know. The strap was the Whoop 3.0, an activity-tracking device that has gained high-profile traction on the PGA Tour, used by the likes of Scott Stallings, Justin Thomas and Rory McIlroy.

Rory McIlroy wore a WHOOP on his wrist at the U.S. Open.                    GETTY IMAGES

50.    The author further reports, "Given Woods [sic] marketability and myriad [of] off-course business dealings, it seemed reasonable to ask whether he owned a piece of Whoop or had struck an endorsement deal with the company. No and No. Ahmed said he first learned of the Woods-Whoop connection *when a user of the product forwarded him an Instagram photo from the football game, which showed the star with the strap on his wrist.*" Ex. 11 (emphasis added).

51.    In another article published on www.golf.com on November 23, 2020, the author reports, "During Friday's round, we spotted a unique accessory on Sierra Brooks. She sported a stylish light blue Whoop Strap — a wearable device that measures physiological data to help optimize the way we sleep, train and recover," along with a picture of Sierra Brooks wearing a WHOOP Wearable during the competition, as excerpted below. Ex. 11.



52.    Third-party articles regularly identify WHOOP users by the design of the WHOOP Wearable and tout the distinctive nature of the WHOOP Wearable and its role in popular culture. *See, e.g.*, Ex. 11 (*Golf.com*) ("McIlroy was first spotted wearing his [WHOOP] device at this year's Memorial Tournament"), (*Golf Monthly*) ("We've always been fascinated by Rory McIlroy's golf

swing, but now we're intrigued by what he's wearing, specifically the strap on his arm…this is Whoop"), (*India.com*) ("ICC World Cup 2023: Virat Kohli Spotted Wearing Whoop Fitness Band"), (*Wired*) ("In a sea of nearly identical fitness trackers, Whoop stands apart."), (*Medium*) ("the Whoop strap has become the latest status symbol in our wellness-obsessed culture."), (*CNET*) ("You've probably seen this discreet, screenless band on the wrists of sports superstars like Partick Mahomes, Cristiano Ronaldo and Mathieu van der Poel"), (*Independent*) ("One of the hottest products right now is the Whoop strap. From basketball superstar LeBron James, to the EF Pro Cycling team, the list of VIP users keeps growing – and it's become more talked about than ever"); (*Indian Express*) ("This screenless wearable device has been turning heads each time it is spotted on a celebrity athlete").

53.    Trade dress serves to identify and distinguish the source of products in the marketplace through distinctive design elements and visual appearance – i.e., it allows consumers to identify a product and its source based solely on the design and appearance of the product, rather than any associated trademark use. WHOOP has achieved this type of source identification and trade dress recognition with its WHOOP Trade Dress, which allows consumers to identify a WHOOP Wearable based on design and appearance alone.

54.    In fact, the WHOOP Trade Dress has become so iconic and beloved that real-world consumers have created their own forums for documenting people wearing the popular WHOOP Wearable based on images and videos. For example, there is an Instagram page called "Whoop In The Wild," which is "[n]ot affiliated with WHOOP," is "always on the hunt" for images of public figures wearing the WHOOP Wearable based solely on its use of the WHOOP Trade Dress. In the majority of the photos and videos posted to this Instagram page, the WHOOP trademark is not

18

visible, so consumers are identifying the wristbands as WHOOP Wearables by the WHOOP Trade

Dress alone, as shown in the representative examples below. *See* Ex. 12.











55.     Similarly, users of the social media platform Reddit have created a sub-thread for "WHOOP sighting[s]" where users post images of athletes and celebrities seen wearing products embodying the WHOOP Trade Dress. *See* Ex. 13. In the majority of the photos and videos posted to this sub-thread, the WHOOP trademark is not visible, so consumers are identifying the wristbands as WHOOP Wearables by the WHOOP Trade Dress alone, as shown in the representative examples below. *See id.*







56.     As demonstrated by the examples above, the WHOOP Trade Dress serves as a quintessential example of effective trade dress, as its form effectively communicates to consumers the source of the product, allowing consumers to recognize the WHOOP Wearable from a distance based on the distinctive, unique design alone. Media, consumers, and fans routinely recognize and identify the WHOOP Wearable based on the WHOOP Trade Dress alone.

57.     The WHOOP Trade Dress is instantly recognized, highly sought after by the general public, and a valuable company asset.

## **LUNA'S UNLAWFUL INFRINGEMENT**

58.     Upon information and belief, Luna is in the business of manufacturing, selling, and distributing consumer electronics, including wearable health monitoring devices.

59.    In January 2026, Plaintiff became aware of Luna's announcement of its anticipated launch of Luna's knockoff WHOOP Wearable, the Luna Band, depicted below.



60.    The Luna Band (the "Infringing Wearable") is a wholesale copy of the WHOOP Trade Dress, including use of a continuous fabric band wrapped across the device to create a faceless front and featuring thin metal or metallic accents around the device, including the use of metal accents across the front of the device used to mimic the trim on the WHOOP Wearable.

| WHOOP Trade Dress | WHOOP Wearable Embodying the WHOOP Trade Dress | Infringing Wearable |
|---|---|---|
| | | |

61.    The obvious and confusing similarity between the WHOOP Wearable embodying the WHOOP Trade Dress and Luna's Infringing Wearable is amplified when each product is seen as worn on the user's wrist:

24

| WHOOP Wearable | Infringing Wearable |
|---|---|
|  | |

Exs. 1, 10, 2, 4.

62.    Upon information and belief, in January 2026, at CES 2026, Luna announced its plans to launch the Infringing Wearable. *See* Exs. 4, 5.

63.    The Infringing Wearable is now being marketed on one of Defendants' websites, https://www.lunazone.com, on Defendants' Instagram page, and in third-party articles. *See* Exs. 2, 4, 14, 15.

64.    In addition to copying the design of the WHOOP Wearable and adopting the WHOOP Trade Dress without authorization from WHOOP, Luna copied the overall look and feel of the advertising of the WHOOP Wearable, further encouraging consumers to associate the Infringing Wearable with WHOOP and intentionally trading off of the goodwill and reputation WHOOP has built over a decade.

65.    For example, Luna states its mission to include "Unlocking Human Potential" – which is the exact phrase WHOOP routinely uses along with its federally-registered slogan,

"UNLOCK YOURSELF." *See* Exs. 2, 16, 17. Similarly, Luna advertises its "LifeOS," which parallels the "LIFE" membership option offered by WHOOP. *See* Exs. 2, 9.

66.     Several third-party news outlets and industry publications highlight the striking similarity between the appearance of the Infringing Wearable and the WHOOP Wearable. *See, e.g.*, Ex. 4 (*TechRadar*) ("Like Whoop's products, the Luna Band lacks a display, instead taking the form of an empty frame (which conceals sensors and a battery) mounted onto a strap."), (*The Independent*) ("Luna's new fitness band looks a lot like Whoop"), (*ZDNET*) ("It's a hands-free health tracker that takes notes from Whoop."), (*Android Central*) ("Whoop-style fitness wearable"), (*Gizmodo*) ("similar to those made by Whoop").

67.     These third-party articles highlight the risk of both pre-sale and post-sale consumer confusion. Only with a level of close examination beyond what is found in the marketplace can a consumer even be certain that Luna's Infringing Wearable is not literally the WHOOP Wearable, given the close similarity in design. Any modest design differences do not alleviate the risk of post-sale consumer confusion, as the products look virtually identical when viewed from even a few feet away on people's wrists, as they are intended to be worn.

68.     As reflected in the headlines from various third-party news outlets and industry publications, Luna designed the Luna Band using the WHOOP Trade Dress to compete directly with WHOOP, despite the limited functionality of Luna's product. *See, e.g.*, Ex. 4 (*TechRadar*) ("Looking for a subscription-free Whoop band? This screenless rival could be the voice-led wearable you're looking for"), (*nextpit Global*) ("Whoop Killer? This New Screen-Free Tracker Is for Anyone Who Hates Subscriptions"), (*Android Headlines*) ("It makes the device a direct competitor to well-known trackers like Whoop . . .").

26

69.     The Infringing Wearable promoted by Luna in connection with the WHOOP Trade Dress is highly similar to the WHOOP Wearable legitimately sold in connection with the WHOOP Trade Dress.

70.     Upon information and belief, Plaintiff and Defendants market and sell wearable health monitoring devices to the same class of consumers, including general consumers.

71.     Plaintiff and Defendants market and offer their products for sale through the same channels of trade, including their websites and social media.

72.     Upon information and belief, Luna markets and sells its wearable health monitoring products, and currently markets the Infringing Wearable, in the same geographic regions that WHOOP markets and sells the WHOOP Wearable in connection with the WHOOP Trade Dress.

73.     As a result of Luna's marketing and anticipated sale of the Infringing Wearable in connection with the WHOOP Trade Dress, consumers are likely to be confused such that consumers will erroneously believe that the Luna Band product is affiliated, connected, or associated with, or in some way related to WHOOP or the WHOOP Wearable.

74.     Upon information and belief, Luna knowingly adopted the WHOOP Trade Dress on its Infringing Wearable with the express intention of confusing consumers and misappropriating the goodwill and business reputation built by WHOOP.

75.     As a competitor in the wearable health monitoring devices industry, Luna is undoubtedly aware of WHOOP, the success of the WHOOP Wearable, and WHOOP ownership of the WHOOP Trade Dress, including rights based on substantially exclusive, continuous use of the WHOOP Trade Dress in the United States since as early as 2015. Luna has further been on constructive notice of WHOOP trade dress rights since at least March 12, 2025, when WHOOP

filed its federal trademark application for registration of one embodiment of the WHOOP Trade Dress.

76. On January 7, 2026, WHOOP sent Defendants a letter, requiring, *inter alia*, that Defendants immediately cease all sale and advertising of the Infringing Wearable and any other products featuring designs or trade dress that is identical or confusingly similar to the WHOOP Trade Dress. Ex. 18.

77. Upon information and belief, having intentionally copied the WHOOP Trade Dress in designing the Infringing Wearable in order to gain an unfair commercial advantage by mimicking WHOOP and trading on the goodwill of the iconic WHOOP trade dress, Defendants are well-aware that they are infringing on WHOOP intellectual property. Additionally, Luna has been on actual notice that it infringes the WHOOP Trade Dress since at least January 7, 2026, when WHOOP sent the letter regarding Luna's infringement of the WHOOP Trade Dress. Thus, since at least January 7, 2026, Defendants' infringement of the WHOOP Trade Dress has been willful and intentional.

78. Luna continues to market and promote the Infringing Wearable in the United States, despite being put on notice of the trade dress rights owned by WHOOP, which constitutes willful trade dress infringement and unfair competition.

79. Luna's unauthorized use of the WHOOP Trade Dress in connection with highly similar, yet inferior, products to those offered by WHOOP in connection with the iconic WHOOP Trade Dress will continue to cause consumer confusion and irreparable harm to WHOOP and its goodwill and reputation in the marketplace. Further, Defendants' unauthorized use of the WHOOP Trade Dress threatens the substantially exclusive use of that trade dress and risks eroding consumer association between the design and WHOOP, resulting in irreparable harm to WHOOP.

## COUNT I
### Federal Trade Dress Infringement
### Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

80.     WHOOP incorporates by reference the allegations set forth above as though fully set out herein.

81.     The WHOOP Trade Dress is non-functional and distinctive based on, among other things, extensive nationwide use, promotion, marketplace success, and recognition, and were so before Defendants first sold, offered for sale, distributed, advertised, or promoted the Infringing Wearable.

82.     Defendants' use of the WHOOP Trade Dress is without permission or authorization from WHOOP and in willful disregard of the rights of WHOOP to control its intellectual property.

83.     Defendants' unauthorized use of the WHOOP Trade Dress in commerce, as described above, has caused and is likely to cause confusion, mistake, or deception, and is likely to cause and has caused consumers to believe incorrectly that the Infringing Wearable is produced, sponsored, authorized, or licensed by or are otherwise connected to or affiliated with WHOOP.

84.     Defendants' unauthorized use of the WHOOP Trade Dress has harmed and will result in future harm to the reputation of WHOOP and its goodwill in its WHOOP Trade Dress in the marketplace.

85.     Defendants' acts are willful, wanton, reckless, and intended to confuse the public and to injure WHOOP.

86.     As a direct and proximate result of the foregoing acts, WHOOP has suffered and will continue to suffer significant injuries in an amount to be determined at trial.

87.     WHOOP is entitled to recover all damages, including attorneys' fees, that it has sustained and will sustain, and all gains, profits, and advantages obtained by Luna as a result of its infringing acts.

88.     There is no adequate remedy at law that can fully compensate WHOOP for the harm caused by Defendants' infringement, which is ongoing. Accordingly, WHOOP is entitled to injunctive relief prohibiting Defendants from continuing to infringe the WHOOP Trade Dress or any designs confusingly similar thereto.

## <u>COUNT II</u>
### Federal Unfair Competition and False Designation of Origin
### Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

89.     WHOOP re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

90.     WHOOP is the owner of the WHOOP Trade Dress and has rights under the WHOOP TRADE DRESS through the filing of its federal application and specimen of use.

91.     Defendants willfully and knowingly used, and continue to use, the WHOOP Trade Dress in interstate commerce for purposes of advertising, offering for sale, and selling the Infringing Wearable without the consent of WHOOP.

92.     Defendants' use of the WHOOP Trade Dress in connection with its business is likely to cause confusion, cause mistake, or deceive because it suggested that the goods provided by Defendants are the same as the goods legitimately bearing the WHOOP Trade Dress. Defendants' use is likely to cause confusion because it also suggests that Defendants' business, or the goods provided by its business in connection with the WHOOP Trade Dress, originate from, or are sponsored, authorized, or otherwise connected with WHOOP.

93.    The goods provided by Defendants are not, in fact, authorized, sponsored, or otherwise connected with WHOOP.

94.    Defendants' unlawful actions and unauthorized use of the WHOOP Trade Dress has materially damaged the value of the WHOOP Trade Dress, caused damage to the reputation of WHOOP, and infringed WHOOP intellectual property rights.

95.    As a proximate result of Defendants' actions, WHOOP has suffered, and will continue to suffer, immediate and irreparable harm, as well as great damage, including to its business, good will, reputation, and profits in an amount to be proven at trial.

### <u>COUNT III</u>
**Deceptive Trade Practices Under Delaware Statutory Law, 6 *Del. C.* § 2532**

96.    WHOOP re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

97.    Defendants' actions, as described above, constitute deceptive trade practices in violation of 6 *Del. C.* 2532 because such actions, *inter alia*, (1) constitute passing off of Defendants' goods and/or services as those of WHOOP; (b) create a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of Defendants' goods and services; and (c) create a likelihood of confusion or misunderstanding as to Defendants' affiliation, connection, or association with, or certification by WHOOP.

98.    WHOOP has been damaged and will continue to be damaged by Defendants' deceptive trade practices.

99.    Defendants have deliberately persisted in its infringing use of the WHOOP Trade Dress despite its knowledge of Plaintiff's rights in the WHOOP Trade Dress. As such, Defendants'

infringement and violation of 6 *Del. C.* § 2532(a) is willful, warranting treble damages, an assessment of costs and/or attorneys' fees pursuant to 6 *Del. C.* § 2532.

**COUNT IV**
**Trade Dress Dilution Under Delaware Statutory Law, 6 *Del. C.* § 3313**

100.    WHOOP re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

101.    The WHOOP Trade Dress is valid, protectable trade dress that is distinctive and has acquired further secondary meaning through widespread sales and marketing. .

102.    WHOOP has used the WHOOP Trade Dress substantially exclusively to identify the source of its products in the United States, including in the District of Delaware, since at least 2015. By virtue of Plaintiff's extensive and continuous use of the WHOOP Trade Dress, the WHOOP Trade Dress has become well-known. A significant number of the consuming public associates the WHOOP Trade Dress with a single source, i.e., WHOOP. The WHOOP Trade Dress is extremely strong.

103.    The WHOOP Trade Dress acquired secondary meaning before Defendants announced the anticipated launch of the Infringing Device.

104.    Defendants' unauthorized use or confusing imitation of the WHOOP Trade Dress in connection with the same or similar goods and/or services is likely to injure Plaintiff's business reputation and has diluted, or is likely to dilute the distinctive quality of the WHOOP Trade Dress in violation of the Delaware Trademark Act, 6 *Del. C.* § 3313.

105.    Defendants intended to trade off of the reputation and goodwill WHOOP and/or acted with reason to know or was willfully blind as to the consequences of its actions.

106.    Defendants' acts of dilution have caused irreparable injury and damage to WHOOP, and unless this Court enjoins Defendants from further commission of such acts,

WHOOP will continue to suffer irreparable injury and damage for which it has no adequate remedy at law.

107.   WHOOP is entitled to a judgment enjoining and restraining Defendants from engaging in further acts of injury that dilute the WHOOP Trade Dress and Plaintiff's business reputation.

**COUNT V**
**Unfair Competition Under State Common Law**

108.   WHOOP re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

109.   WHOOP owns and enjoys common-law rights in Delaware and throughout the United States in the WHOOP Trade Dress for use in connection with (*inter alia*) wearable health monitoring devices, which are superior to any rights that Defendants' may claim in the WHOOP Trade Dress in any form or style with respect to the provision and sale of (*inter alia*) wearable health monitoring devices.

110.   Defendants' use of the WHOOP Trade Dress capitalizes upon and trades upon, and is intended to capitalize upon and trade upon, the goodwill and reputation of WHOOP and the WHOOP Trade Dress.

111.   Defendants' marketing, offering for sale, and/or sale of goods and/or services in connection with the WHOOP Trade Dress constitute trademark infringement and unfair competition under the common law of the State of Delaware.

112.   As a result of Defendants' conduct, the public is likely to believe that Defendants' products have originated from and/or have been approved by WHOOP, when they have not.

113.    Defendants' unauthorized use or confusing imitation of the WHOOP Trade Dress is a knowing, willful, and intentional violation of Plaintiff's common-law rights, demonstrating bad-faith intent to trade on the goodwill associated with the WHOOP Trade Dress.

114.    Defendants' acts of unfair competition complained of herein have caused irreparable injury and damage to WHOOP. In addition, upon information and belief, Defendants' actions will cause WHOOP to lose income, profits, and goodwill while Defendants acquire income, profits, and/or goodwill. Defendants' infringement diminishes the value of the WHOOP Trade Dress, and goodwill and business reputation of WHOOP.

115.    For this unfair competition, WHOOP is entitled to injunctive relief; damages, including but not limited to Defendants' profits, actual damages suffered by WHOOP, and punitive damages; and attorneys' fees, costs, and interest.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff requests entry of judgment against Defendants on each and every claim as set forth above and an award of relief, including the following:

A.  Judgment in favor WHOOP and against Defendants in an amount to be determined at trial, including, but not limited to, compensatory damages, statutory damages, treble damages, restitution, including disgorgement of profits, and other damages, as permitted by law.

B.  A preliminary and permanent injunction enjoining Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

1. Prohibiting Enjoined Parties from advertising, selling, promoting, or displaying the Infringing Wearable and/or any product that uses the WHOOP Trade Dress and/or anything confusingly similar thereto;

2. Prohibiting Enjoined Parties from using, registering, or attempting to register the WHOOP Trade Dress or any other trade dress or design that is confusingly similar to the WHOOP Trade Dress in any manner;

3. Prohibiting Enjoined Parties from representing by any means whatsoever, directly or indirectly, that Luna or any of its products or activities are associated, connected, or affiliated with WHOOP, and/or sponsored, authorized, or licensed by WHOOP;

4. Prohibiting Enjoined Parties from effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth above; and

5. Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites, social media, marketing, promotions, or any other any reference to the WHOOP Trade Dress,  or any other mark that is confusingly similar to the WHOOP Trade Dress.

C. An Order directing Defendants to, within 30 days after the entry of the permanent injunction, file with this Court and serve on the attorneys for WHOOP a report in writing and under oath setting forth in detail the manner and form in which Luna has complied with the injunction.

D. An Order adjudging that this is an exceptional case.

E. An award of attorneys' fees, costs, and expenses;

F.  Such other relief as the Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: January 22, 2026

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Amy M. Dudash*

Amy M. Dudash (#5741)
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
Tel.: (302) 574-3000
Facsimile: (302) 574-3001
amy.dudash@morganlewis.com

Joshua M. Dalton (to be admitted *pro hac vice*)
Katherine W. Soule (to be admitted *pro hac vice*)
Tessa A. Ruff (to be admitted *pro hac vice*)
One Federal Street
Boston, MA 02110-1726
Tel.: (617) 341-7700
Facsimile: (617) 341-7701
josh.dalton@morganlewis.com
katherine.soule@morganlewis.com
tessa.ruff@morganlewis.com

*Counsel for Plaintiff WHOOP, Inc.*